Note.—See under (1) 17 C. J. p. 878, §183; anno. L. R. A. 1915C, 319; 4 A. L. R. 1350; 15 A. L. R. 700; 32 A. L. R. 706; 32 A. L. R. 711; 8 R. C. L. p. 487; 2 R. C. L. Supp. 619; 5 R. C. L. Supp. p. 472. (2) 17 C. J. pp. 825, §146; 877, §183; anno. L. R. A. 1918A. 276. (3) 17 C. J. pp. 878, §183; 1057, §361. (4) 17 C. J. p. 806, §131. (5) 17 C. J. pp. 1042, §340; 1122, §465.

## KENNEDY et al. v. BRIDGE.

No. 17085—Opinion Filed Oct. 5, 1926.

Rehearing Denied Nov. 9, 1926.

**1. Vendor and Purchaser—Bona Fide Purchasers—Duty to·Pursue Inquiry as to Asserted Claims of Third Persons.**

In determining the sufficiency of facts and circumstances that make it a person's duty to inquire into the asserted claims of third persons to real estate about to be purchased, it must appear that there is such connection between the facts discovered and the further facts to be discovered that the former may be said to furnish a reasonable and natural clue to the latter. Circumstances that are dubious or equivocal are not sufficient to take the place of actual notice.

**2. Appeal and Error—Sufficiency of Evidence in Law Action.**

Where, in the trial of a law case, a jury is waived and the cause tried to the court without a jury, the findings and judgment of the court will not be set aside on appeal, because of insufficiency, if there is any competent evidence in the record reasonably tending to support such findings and judgment.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by Eli Bridge against R. A. Kennedy, nee Baugus, and Mattie Baugus. Judgment for plaintiff, and defendants appeal. Affirmed.

H. M. Jarrett, for plaintiffs in error.

Thos. G. Andrews and Clyde L. Andrews, for defendant in error.

Opinion by FOSTER, C. The defendant in error was plaintiff and the plaintiffs in error were defendants in the trial court, and the parties will be hereinafter designated as they appeared in that court. On the 24th day of October, 1924, the plaintiff filed in the district court of Lincoln county his petition in ejectment against the defendants, alleging that he was the owner of a town lot in the town of Davenport and entitled to the immediate possession thereof, setting up a copy of the deed evidencing his title and ownership, and praying for possession of the real estate and damages.

An amended answer was filed by the defendants, in which they alleged in substance that they were the owners of the real estate in controversy, and, for a number of years prior to the institution of plaintiff's action, had been in the peaceable, quiet, open,

and notorious possession of said real estate, either in person or by a tenant, paying the taxes thereon, and exercising absolute and unconditional control thereof.

It was further alleged that defendants' ownership and possession of said real estate was based upon the fact that prior to 1913, Martin J. Baugus, then the husband of the defendant R. A. Kennedy, purchased the said lot with funds belonging to the defendant R. A. Kennedy, derived by her from her father's estate, taking the title in his own name, and that subsequently, and about the time of the death of Martin J. Baugus, she and her husband conveyed said lot to G. P. Baugus, a brother of Martin J. Baugus, deceased, in trust for the use and benefit of the defendant R. A. Kennedy, with the distinct understanding that said property was to be reconveyed to the defendants, and that the plaintiff in fraud of the rights of the defendants and in violation of said trust agreement obtained title to the real estate on the 15th day of October, 1924, through a deed executed by G. P. Baugus to J. W. Adams on the 4th day of October, 1924, and by him conveyed to the plaintiff.

Plaintiff filed a reply, and the cause thereupon proceeded to trial before the court without the intervention of a jury, a jury by stipulation being waived. A general judgment was rendered in favor of the plaintiff for the possession of said property. From this judgment and from an order overruling their motion for a new trial, the defendants appeal to this court for review by petition in error with case-made attached.

Several propositions are urged in the argument of defendants as grounds for a reversal of the judgment, all of them being based upon the assumption that under the uncontradicted evidence, as disclosed by the record, defendants were at all times shown to have been in the quiet and undisputed possession of said real estate. The evidence discloses that prior to 1913, Martin J. Baugus and the defendant R. A. Kennedy, who was then the wife of Martin J. Baugus, were engaged in the mercantile business in the town of Davenport, and becoming financially involved, and desiring to prevent their creditors from seizing the lot in question, together with other lots in the town of Davenport, which lots had been purchased by Martin J. Baugus with funds belonging to the defendant R. A. Kennedy, conveyed the same to G. P. Baugus, a brother of Martin J. Baugus, under an oral understanding subsequently reached, that G. P. Baugus should reconvey the property to the defendant R. A. Kennedy.

Martin J. Baugus died in the year 1913, but prior to his death and in satisfaction of a claim for medical services owing by him to Dr. E. F. Nickells, he directed his brother, G. P. Baugus, to convey one of the lots adjoining the lot in controversy to E. F. Nickells, which was done. Two of the remaining three lots were subsequently conveyed by G. P. Baugus to the defendant R. A. Kennedy, but for some reason, which does not satisfactorily appear from the record, the lot in question was not reconveyed, or if it was reconveyed the grantee was never able to find the deed. Subsequently, Dr. Nickells, in attempting to take possession of the lot purchased by him, inadvertently, or through mistake, located and constructed his office so that it encroached upon the lot in question, part of the building being located on his own lot and part on the lot in controversy.

At the same time through mistake, he constructed a garage located entirely upon the lot in question. At the time he purchased the lot from Martin J. Baugus he was advised by Martin J. Baugus that the lot in controversy, along with other lots, had been conveyed to his brother, G. P. Baugus. G. P. Baugus at all times lived and resided in Okmulgee, Okla.

On October 5, 1924, G. P. Baugus conveyed the lot in controversy, by a quitclaim deed, to one J. W. Adams for a recited consideration of $50. On October 15th thereafter, J. W. Adams in turn, by quitclaim deed, conveyed the property to the plaintiff for a cash consideration of $1,000, in hand paid.

Dr. Nickells continued to occupy and use the office and garage so constructed by him until after the plaintiff acquired his deed of October 15, 1924. The lot was unfenced at the time plaintiff obtained his deed on October 15, 1924, and there was no indicia of possession by anyone except the office building and garage erected by Dr. Nickells. It is contended that the defendants had actual possession of the lot, and had paid taxes thereon for a number of years prior to October 15, 1924, and that this possession put the plaintiff upon inquiry as to the nature of the claims asserted by them, and that if the plaintiff had inquired concerning the claim asserted by defendants he would have discovered that they were the owners and entitled to the possession of the land.

It is not disputed that the plaintiff paid the fair value of the lot on October 15, 1924. The plaintiff testified that he examined the

deed record and found that G. P. Baugus owned the lot, and on the 4th day of October, 1924, sold it to J. W. Adams, his grantor; that there was no fence around the lot when he purchased it on October 15, 1924, and that it was then vacant. He further testified that he spoke to young Dr. Nickells about the little garage on the back end of the lot, and was told that the garage was owned by Dr. Nickells. J. W. Adams testified that there was nothing on the property at the time he purchased it. Dr. E. F. Nickells testified that through error and mistake he built his office in part upon the lot in question, thinking that he was building it upon his own lot, and without any intent on his part to construct the building on the lot in question; that he constructed the little garage under the same circumstances, and that he had never at any time paid any rent to anyone for the use of the lot.

This evidence we think reasonably tended to show that the lot in question was vacant at the time the plaintiff obtained his deed on October 15, 1924, or if it was not unoccupied, that the possession of Dr. Nickells was purely accidental and in no way connected with the claim asserted by defendants.

The fact that Dr. Nickells, in attempting to take possession of his own property, inadvertently located his office and garage upon the lots in question, would not suggest any connection between that fact and an outstanding claim asserted by some third party to said lot so as to require a purchaser to make inquiry concerning such claim.

When it had been made to appear to the plaintiff that the possession of Dr. Nickells was accidental and not connected in any way with the title to the lot in question, he had the undoubted right, we think, in the absence of other indicia of possession on the part of defendants, to assume that the lot in question was vacant and unoccupied, and there was no duty upon him to prosecute an inquiry into asserted claims of third parties in no wise connected with the possession disclosed.

In 21 Am. & Eng. Enc. of Law (2nd Ed.) p. 585, it is said:

"No general rule can be formulated which will govern in all cases the sufficiency of the facts or circumstances that make it a person's duty to inquire, but each case must rest on its own facts. * * * It may be premised that the means of knowledge must be available and of such a character that a prudent man might be expected to take advantage of them. There must appear in the nature of the case such a connection between the facts discovered and the further facts to be discovered, that the former may be said to furnish a reasonable and natural clue to the latter. Circumstances that are dubious or equivocal are not sufficient to take the place of actual notice."

It is contended by defendants in this connection, however, that the testimony of Dr. Nickells, to the effect that in a conversation with defendants, subsequent to the erection of the office and garage, he was told by the defendants that the lot in question, upon which he had erected the two structures, belonged to defendants, and that this information when imparted to Dr. Nickells had the effect of placing the defendants in possession of the lot so as to put the plaintiff upon inquiry as to their rights thereto. We are unable to agree with this contention.

In contemplation of law the lot was vacant and unoccupied in spite of the mistake of Dr. Nickells in locating the office and garage thereon, just as the lot would continue to be vacant and unoccupied in contemplation of law if through some act of God the building had been deposited upon the lot.

The legal status of the lot as vacant and unoccupied property could not, we think, be changed merely by a declaration of the defendants, to the effect that the property belonged to them long after the erection of the building, where there had been no physical possession taken of the property so as to put third parties upon inquiry as to the contents of such declaration.

Plaintiff's action was an action at law for the recovery of specific real property. The judgment of the trial court was a general judgment in favor of the plaintiff, and if there was any evidence reasonably tending to show that the property in controversy. at the time plaintiff acquired his deed on October 15, 1924, was vacant and unoccupied, the judgment of the trial court must be sustained. We have examined the evidence sufficiently to be convinced that there was evidence reasonably tending to show that the lot in controversy was vacant at the time the plaintiff obtained his deed, and that the defendants were not in the possession of said lot at that time under a claim of title thereto.

The rule applicable to this situation is stated in Hobbs v. McGhee, 100 Okla. 210, 229 Pac. 240, as follows:

"*In an action at law, a jury being waived, the judgment of the court has the same force and effect as the verdict of a jury, and if there is any evidence reasonably tending to*

support the judgment of the court, the judgment will not. be disturbed by this court on appeal."

It is true that the defendants testified that they had at all times been in possession of the lot in controversy. They testified, however, that after they obtained information of the conveyance of said lot by G. P. Bangus to the plaintiff, they moved a building on said lot in 'an attempt to justify their possession and hold said property. This conduct, together with their sworn testimony, was heard and considered by the trial court in connection with the other testimony in the case, including the testimony of the plaintff, and the finding of the trial court based upon this contradictory testimony is binding in this court on appeal.

It becomes unnecessary, in view of the conclusion reached, to consider and pass upon the various propositions relied on by the defendants for a reversal of the judgment of the trial court, for all of them are based upon the erroneous assumption that the uncontradicted evidence, as disclosed by the record, established possession of the property in defendants at the time plaintiff obtained title.

The judgment of the trial court was sustained by ample evidence reasonably tending to show that the lot in controversy was not in the possession of the defendants on October 15, 1924, but was vacant and unoccupied, and this judgment must therefore be sustained.

The judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 39 Cyc. pp. 1703, 1706: 27 R. C. L. p. 711; 3 R. C. L. Supp. p. 1519; 4 R. C. L. Supp. p. 1764: 5 R. C. L. Supp. p. 1482. (2) 4 C. J. p. 879, §2853; 2 R. C. L. p. 202; 1 R. C. L. Supp. 441; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81.